**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**In re**                                        **:**
                                             **:**    **Chapter 11 Case No.**
**WESTPOINT STEVENS INC., et al.,**        **:**    **03-13532 (RDD)**
                                           **:**    **(Jointly Administered)**
                                         **:**
                     **Debtors.**             **:**
-------------------------------------------------------------x

<br>

## DEBTORS' AMENDED JOINT PLAN
## <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

<br><br><br>

WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors and
Debtors in Possession
767 Fifth Avenue
New York, New York 10153
(212) 310-8000


Dated: June 10, 2005

# TABLE OF CONTENTS

**Page**

Section 1.     DEFINITIONS AND INTERPRETATION...................................................1

A.     Definitions ........................................................................................1

1.1.     Adequate Protection Order.........................................................1

1.2.     Administrative Expense Claim ...................................................1

1.3.     Allowed......................................................................................1

1.4.     APA............................................................................................2

1.5.     Assigned Contracts and Leases..................................................2

1.6.     Assumed Administrative Expense Claim....................................2

1.7.     Avoidance Actions .....................................................................2

1.8.     Bankruptcy Code........................................................................2

1.9.     Bankruptcy Court........................................................................2

1.10.     Bankruptcy Rules .......................................................................2

1.11.     Beneficial Interests .....................................................................2

1.12.     Bidding Procedures .....................................................................2

1.13.     Bidding Procedures Order...........................................................2

1.14.     Business Day...............................................................................2

1.15.     Cash............................................................................................2

1.16.     Catch-up Distribution .................................................................2

1.17.     Cause of Action..........................................................................3

1.18.     Claim ..........................................................................................3

1.19.     Class ...........................................................................................3

1.20.     Closing........................................................................................3

1.21.     Collateral.....................................................................................3

1.22.     Commencement Date ..................................................................3

1.23.     Confirmation Date.......................................................................3

1.24.     Confirmation Hearing .................................................................3

1.25.     Confirmation Order .....................................................................3

1.26.     Creditors Committee....................................................................3

1.27.     Debtors........................................................................................3

1.28.     Debtors in Possession .................................................................3

1.29.     DIP Credit Agreement .................................................................3

i

TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| 1.30. | DIP Claim | 3 |
| 1.31. | Disbursing Agent | 3 |
| 1.32. | Disclosure Statement | 3 |
| 1.33. | Disputed Claim | 4 |
| 1.34. | Distribution Record Date | 4 |
| 1.35. | Effective Date | 4 |
| 1.36. | Equity Interest | 4 |
| 1.37. | Estates | 4 |
| 1.38. | Final DIP Order | 4 |
| 1.39. | Final Distribution Date | 4 |
| 1.40. | Final Order | 4 |
| 1.41. | First Lien Lender Administrative Agent | 5 |
| 1.42. | First Lien Lender Agreement | 5 |
| 1.43. | First Lien Lender Claim | 5 |
| 1.44. | General Unsecured Claim | 5 |
| 1.45. | Indentures | 5 |
| 1.46. | Indenture Trustee | 5 |
| 1.47. | Intercompany Claim | 5 |
| 1.48. | Liquidating Trust | 5 |
| 1.49. | Liquidating Trust Agreement | 5 |
| 1.50. | Liquidating Trust Assets | 5 |
| 1.51. | Liquidating Trust Claims Reserve | 5 |
| 1.52. | Litigation Claim | 6 |
| 1.53. | NewCo | 6 |
| 1.54. | Non-Assumed Administrative Expense Claim | 6 |
| 1.55. | Noteholder Claim | 6 |
| 1.56. | Other Secured Claim | 6 |
| 1.57. | PBGC Claim | 6 |
| 1.58. | Plan | 6 |
| 1.59. | Plan Documents | 6 |
| 1.60. | Plan Supplement | 6 |

| | | |
|---|---|---|
| 1.61. | Priority Non-Tax Claim | 6 |
| 1.62. | Priority Tax Claim | 6 |
| 1.63. | Punitive Damage Claim | 6 |
| 1.64. | Purchaser | 6 |
| 1.65. | Purchaser Selection Hearing | 7 |
| 1.66. | Purchaser Selection Order | 7 |
| 1.67. | Ratable Proportion | 7 |
| 1.68. | Reorganization Cases | 7 |
| 1.69. | Sale Order | 7 |
| 1.70. | Sale Proceeds | 7 |
| 1.71. | Schedules | 7 |
| 1.72. | Second Lien Lender Administrative Agent | 7 |
| 1.73. | Second Lien Lender Agreement | 7 |
| 1.74. | Second Lien Lender Claim | 7 |
| 1.75. | Secured Claim | 8 |
| 1.76. | Securities Act | 8 |
| 1.77. | Securities Litigation Claim | 8 |
| 1.78. | Series A Beneficial Interests | 8 |
| 1.79. | Series B Beneficial Interests | 8 |
| 1.80. | Series C Beneficial Interests | 8 |
| 1.81. | Tax Code | 8 |
| 1.82. | WestPoint Common Stock Interest | 8 |
| B. | Interpretation; Application of Definitions and Rules of Construction | 8 |
| Section 2. | ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS | 9 |
| 2.1. | Assumed Administrative Expense Claims | 9 |
| 2.2. | Non-Assumed Administrative Expense Claims | 9 |
| 2.3. | Compensation and Reimbursement Claims | 9 |
| 2.4. | Priority Tax Claims | 10 |
| 2.5. | DIP Claims | 10 |
| Section 3. | CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS | 11 |
| Section 4. | TREATMENT OF CLAIMS AND EQUITY INTERESTS | 11 |

4.1. Priority Non-Tax Claims (Class A) .................................................................. 11

4.2. Other Secured Claims (Class B) .................................................................... 12

4.3. First Lien Lender Claims (Class C) ............................................................... 12

4.4. Second Lien Lender Claims (Class D) ........................................................... 12

4.5. General Unsecured Claims (Class E) ............................................................. 12

4.6. Noteholder Claims (Class F) ......................................................................... 12

4.7. PBGC Claims (Class G) ................................................................................ 12

4.8. Litigation Claims (Class H) ........................................................................... 12

4.9. Intercompany Claims (Class I) ...................................................................... 13

4.10. Securities Litigation Claims (Class J) ........................................................... 13

4.11. Punitive Damage Claims (Class K) ............................................................... 13

4.12. Common Stock Interests (Class L) ................................................................ 13

Section 5. MEANS FOR IMPLEMENTATION ......................................................... 13

5.1. Sale of Substantially All the Assets ............................................................... 13

5.2. Deemed Consolidation of Debtors for Plan Purposes Only ............................ 13

5.3. Authorization of Plan Securities ................................................................... 14

5.4. Release of Representatives ............................................................................ 14

5.5. Cancellation of Existing Securities and Agreements ...................................... 14

5.6. Board of Directors ........................................................................................ 14

5.7. Officers ........................................................................................................ 14

5.8. Corporate Action .......................................................................................... 14

5.9. Effectuating Documents and Further Transactions ........................................ 15

5.10. Claims Administration, Prosecution and Plan Distributions .......................... 15

5.11. Dissolution .................................................................................................. 15

Section 6. DISTRIBUTIONS ...................................................................................... 15

6.1. Distribution Record Date .............................................................................. 15

6.2. Date of Distributions .................................................................................... 16

6.3. Post-Petition Interest on Claims ................................................................... 16

6.4. Distributions to Classes ................................................................................ 16

6.5. Disbursing Agent .......................................................................................... 17

6.6. Rights and Powers of Disbursing Agent ........................................................ 17

**TABLE OF CONTENTS**
**(continued)**

| | | |
|---|---|---|
| 6.7. | Compensation of Expenses Incurred on or After the Effective Date | 17 |
| 6.8. | Surrender of Instruments | 17 |
| 6.9. | Delivery of Distributions | 17 |
| 6.10. | Distributions of Cash | 18 |
| 6.11. | Fractional Shares | 18 |
| 6.12. | Setoffs | 18 |
| 6.13. | Minimum Distributions | 18 |
| 6.14. | Distributions After the Effective Date | 18 |
| 6.15. | Allocation of Plan Distributions Between Principal and Interest | 19 |
| 6.16. | Withholding and Reporting Requirements | 19 |
| Section 7. | PROCEDURES FOR DISPUTED CLAIMS | 19 |
| 7.1. | Objections to Claims | 19 |
| 7.2. | Payments and Distributions with Respect to Disputed Claims | 19 |
| 7.3. | Estimation of Claims | 20 |
| 7.4. | Distributions Relating to Disputed Claims | 20 |
| 7.5. | Distributions after Allowance | 20 |
| 7.6. | Preservation of Rights to Settle Claims | 20 |
| 7.7. | Disallowed Claims | 21 |
| Section 8. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 21 |
| 8.1. | General Treatment | 21 |
| 8.2. | Assigned Contracts and Leases | 21 |
| 8.3. | Cure of Defaults | 22 |
| 8.4. | Rejection Claims | 22 |
| 8.5. | Insurance Policies | 22 |
| Section 9. | ESTABLISHMENT OF THE LIQUIDATING TRUST AND APPOINTMENT OF A LIQUIDATING TRUSTEE | 22 |
| 9.1. | Appointment of a Liquidating Trustee | 22 |
| 9.2. | Creation of the Beneficial Interests and Execution of the Liquidating Trust Agreement | 22 |
| 9.3. | Purpose of the Liquidating Trust | 23 |
| 9.4. | Assignment of Trust Assets | 23 |
| 9.5. | Books and Records | 23 |

9.6. Role of the Liquidating Trustee ...................................................................... 24

9.7. Nontransferability of Liquidating Trust Interests ............................................ 24

9.8. Permitted Investments .................................................................................... 24

9.9. Costs, Expenses and Compensation of the Liquidating Trustee ...................... 24

9.10. Distribution of Liquidating Trust Assets ........................................................ 24

9.11. Retention of Professionals by the Liquidating Trustee .................................... 25

9.12. Federal Income Tax Treatment of Liquidating Trust ...................................... 25

9.13. Dissolution of the Liquidating Trust .............................................................. 27

9.14. Indemnification of the Liquidating Trustee .................................................... 27

9.15. Closing of the Chapter 11 Cases .................................................................... 27

9.16. Closing of the Chapter 11 Cases by Charitable Gift ...................................... 27

Section 10. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE ............................................................................................................... 28

10.1. Conditions Precedent to Confirmation .......................................................... 28

10.2. Conditions Precedent to the Effective Date .................................................... 28

10.3. Failure of Conditions .................................................................................... 28

10.4. Satisfaction of Conditions ............................................................................ 29

Section 11. EFFECT OF CONFIRMATION ......................................................................... 29

11.1. Vesting of Assets .......................................................................................... 29

11.2. Discharge of Claims and Termination of Equity Interests .............................. 29

11.3. Discharge of Debtors .................................................................................... 29

11.4. Term of Injunctions or Stays ........................................................................ 30

11.5. Injunction Against Interference With the Plan or APA ................................... 30

11.6. Exculpation .................................................................................................. 30

11.7. Retention of Causes of Action/Reservation of Rights .................................... 30

Section 12. RETENTION OF JURISDICTION ..................................................................... 31

Section 13. MISCELLANEOUS PROVISIONS .................................................................... 32

13.1. Payment of Statutory Fees ............................................................................ 32

13.2. Dissolution of Statutory Committee of Unsecured Creditors .......................... 32

13.3. Substantial Consummation ............................................................................ 33

13.4. Effectuating Documents & Further Transactions ............................................ 33

13.5. Corporate Action .......................................................................................... 33

**TABLE OF CONTENTS**
**(continued)**

13.6.   Request for Expedited Determination of Taxes ................................................ 33

13.7.   Exemption from Transfer Taxes .................................................................. 33

13.8.   Amendments ........................................................................................... 33

13.9.   Revocation or Withdrawal of the Plan ........................................................ 34

13.10.  Severability ............................................................................................ 34

13.11.  Governing Law ....................................................................................... 34

13.12.  Time ...................................................................................................... 34

13.13.  Notices .................................................................................................. 34

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

In re                                                :

                                                     :          **Chapter 11 Cases No.**

**WESTPOINT STEVENS INC.,** *et. al.*,               :          **03-13532 (RDD)**

                                                     :          **(Jointly Administered)**

                       **Debtors.**                 :

---------------------------------------------------------------- x

**DEBTORS' AMENDED JOINT PLAN UNDER**
**CHAPTER 11 OF THE BANKRUPTCY CODE**

WestPoint Stevens Inc., and the other above-captioned debtors and debtors in possession propose the following joint chapter 11 Plan, pursuant to section 1121(a) of title 11 of the United States Code:

SECTION 1.     **DEFINITIONS AND INTERPRETATION**

A.     **Definitions.**

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

1.1.     *Adequate Protection Order* means the final order (including any amendments thereto) pursuant to Sections 361, 363 and 364(d)(1) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure providing the First Lien Lenders and Second Lien Lenders adequate protection which was entered by the Bankruptcy Court on June 18, 2003.

1.2.     *Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of any of the Reorganization Cases allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Reorganization Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

1.3.     *Allowed* means, with reference to any Claim, (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 7.1 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or hereunder.

1.4.     **APA** means the Asset Purchase Agreement dated as of _____, 2005, by and among the Debtors and the Purchaser in accordance with the Bidding Procedures Order for the sale of all or substantially all of the Debtors' assets, which will be approved by the Bankruptcy Court at the Purchaser Selection Hearing.  A copy of the APA will be filed as an exhibit to the Plan after the Purchaser Selection Hearing.

1.5.     **Assigned Contracts and Leases** means the executory contracts and unexpired leases that will be assumed and assigned in accordance with Section 8 hereof and the APA.

1.6.     **Assumed Administrative Expense Claim** means any Administrative Expense Claim that is being assumed by the Purchaser under the APA or paid on the Effective Date.

1.7.     **Avoidance Actions** means all Claims and/or causes of action arising under or authorized by sections 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors, the Debtors in Possession and the Debtors' Estates.

1.8.     **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to the Reorganization Cases.

1.9.     **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Reorganization Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Reorganization Cases under section 151 of title 28 of the United States Code.

1.10.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Reorganization Cases, and any Local Rules of the Bankruptcy Court.

1.11.     **Beneficial Interests** means the Series A Beneficial Interests, Series B Beneficial Interests and Series C Beneficial Interests in the Liquidating Trust.

1.12.     **Bidding Procedures** means those procedures for bidding for all or substantially all of the Debtors' assets set forth in the Bidding Procedures Order.

1.13.     **Bidding Procedures Order** means the order approving the Debtors' Bidding Procedures and forms of notice in connection therewith in connection with the sale of substantially all of the Debtors' assets free and clear of all liens, Claims, encumbrances and other interests which was entered by the Bankruptcy Court on April 22, 2005.

1.14.     **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.15.     **Cash** means legal tender of the United States of America.

1.16.     **Catch-up Distribution** means with respect to each holder of an Allowed Claim in Classes E, F and G the difference between (i) the Ratable Proportion of Sale Proceeds (if any) and the beneficial interests in the Liquidating Trust such holder would have received if the resolution of all Disputed Claims in such Classes had been known on the Effective Date, and (ii) the aggregate amount of Sale Proceeds (if any) and beneficial interests in the Liquidating Trust.

1.17. ***Cause of Action*** means any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Cases, including through the Effective Date, but not including the Avoidance Actions.

1.18. ***Claim*** has the meaning set forth in section 101 of the Bankruptcy Code.

1.19. ***Class*** means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.20. ***Closing*** shall have the meaning set forth in the APA.

1.21. ***Collateral*** means any property or interest in property of the estate of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.22. ***Commencement Date*** means June 1, 2003.

1.23. ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.24. ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.25. ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.26. ***Creditors Committee*** means the statutory committee of unsecured creditors appointed in the Reorganization Cases, as constituted from time to time.

1.27. ***Debtors*** means WestPoint Stevens Inc., WestPoint Stevens I., J.P. Stevens and Co., Inc., J.P. Stevens Enterprises, Inc., and WestPoint Stevens Stores, Inc.

1.28. ***Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Chapter 11 cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.29. ***DIP Credit Agreement*** means that certain credit agreement, dated as of June 5, 2003, as amended, among the Debtors, Bank of America, N.A., as Administrative Agent, Wachovia Bank, National Association, as Syndication Agent and the other lenders who are time to time parties thereto.

1.30. ***DIP Claim*** means all claims arising under the DIP Credit Agreement.

1.31. ***Disbursing Agent*** means any entity (including any applicable Debtor or the Liquidating Trustee if it acts in such capacity) in its capacity as a disbursing agent under Section 6.4 hereof.

1.32. ***Disclosure Statement*** means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.33.     ***Disputed Claim*** means any Claim which has not been Allowed pursuant to the Plan or a Final Order, and

(a)      if no proof of claim has been filed by the applicable deadline:  (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors, the Liquidating Trustee or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or

(b)      if a proof of claim or request for payment of an Administrative Claim has been filed by the applicable deadline:  (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors or the Liquidating Trustee which has not been withdrawn or determined by a Final Order; or (v) any Litigation Claim.

1.34.     ***Distribution Record Date*** means the Confirmation Date.

1.35.     ***Effective Date*** means a Business Day on or after the Confirmation Date specified by the Debtors on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to the effectiveness of the Plan specified in Section 10 hereof have been satisfied or waived.

1.36.     ***Equity Interest*** means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.37.     ***Estates*** means the Debtors' estates created pursuant to section 541 of the Bankruptcy Code.

1.38.     ***Final DIP Order*** means the final order (including any amendments thereto) (i) authorizing the Debtors in Possession to obtain financing, grant security interests and accord priority status pursuant to 11 U.S.C. §§ 361 and 364(c) and 364(d); (ii) authorizing the Debtors to use cash collateral pursuant to 11 U.S.C. §§ 361 and 363 and (iii) modifying the automatic stay which was entered by the Bankruptcy Court on June 18, 2003.

1.39.     ***Final Distribution Date*** means, in the event there exist on the Effective Date any Disputed Claims, a date selected by the Debtors or the Liquidating Trustee in their sole discretion, on which all such Disputed Claims have been resolved by Final Order.

1.40.     ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Reorganization Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or

resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

1.41. ***First Lien Lender Administrative Agent*** means Beal Bank (as successor to Bank of America N.A.) as administrative agent under the First Lien Lender Agreement and any successor agent thereto.

1.42. ***First Lien Lender Agreement*** means that certain Second Amended and Restated Credit Agreement, dated as of June 9, 1998, among WestPoint Stevens Inc., as Borrower, WestPoint Stevens (U.K.) Limited and WestPoint Stevens (Europe) Limited, as Foreign Borrowers, Bank of America, N.A., as Issuing Lender, Swingline Lender and Administrative Agent and the several banks and other financial institutions from time to time parties thereto.

1.43. ***First Lien Lender Claim*** means any Claim against any of the Debtors based on the First Lien Lender Agreement (inclusive of post-petition interest) to the extent of the value of the Collateral securing such Claims, net of all cash payments made by the Debtors to the holders of such claims on or after the Commencement Date.

1.44. ***General Unsecured Claim*** means any Claim against any of the Debtors that (a) is not an Other Secured Claim, First Lien Lender Claim, Second Lien Lender Claim, Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Intercompany Claim, PBGC Claim, Noteholder Claim, Securities Litigation Claim or Punitive Damage Claim or (b) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

1.45. ***Indentures*** means (i) that certain indenture, dated as of June 9, 1998, between WestPoint and HSBC Bank USA (as successor to the Bank of New York) as Trustee, in the original aggregate principal amount of $525,000,000 and (ii) that certain Indenture, dated as of June 9, 1998, between WestPoint and HSBC Bank USA (as successor to the Bank of New York) as Trustee, in the original aggregate principal amount of $475,000,000.

1.46. ***Indenture Trustee*** means HSBC Bank USA (as successor to the Bank of New York) as indenture trustee under the Indentures or any successor trustees under the Indentures.

1.47. ***Intercompany Claim*** means a Claim held by a wholly-owned Debtor against another wholly-owned Debtor.

1.48. ***Liquidating Trust*** means the liquidating trust described in Article 9 hereof.

1.49. ***Liquidating Trust Agreement*** means the agreement governing the Liquidating Trust, dated as of the Effective Date, substantially in the form set forth in the Plan Supplement.

1.50. ***Liquidating Trust Assets*** means the Avoidance Actions and any other assets not transferred pursuant to the APA which are transferred by the Debtors to the Liquidating Trust (or in the event the Liquidating Trust is not formed, to the Second Lien Lender Administrative Agent) on the Effective Date and the earnings and proceeds therefrom.

1.51. ***Liquidating Trust Claims Reserve*** has the meaning assigned to such term in Section 9.12(b)(iv) hereof.

1.52. ***Litigation Claim*** means any claim related to personal injury, property damage, products liability, wrongful death, patent liability, environmental damage, antitrust, asbestos, or other similar claims against any of the Debtors.

1.53. ***NewCo*** means the entity formed to be the parent company of Purchaser to purchase all or substantially all of the Debtors' assets.

1.54. ***Non-Assumed Administrative Expense Claim*** means any Administrative Expense Claim that is not being assumed by Purchaser under the APA or paid on the Effective Date.

1.55. ***Noteholder Claim*** means any Claim against any of the Debtors arising under or in connection with the notes issued by WestPoint Stevens Inc., under the Indentures.

1.56. ***Other Secured Claim*** means any Secured Claim against any of the Debtors not constituting a secured First Lien Lender Claim or a Second Lien Lender Claim.

1.57. ***PBGC Claim*** means any Claim of the Pension Benefit Guaranty Corporation against any of the Debtors.

1.58. ***Plan*** means this joint chapter 11 plan, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.59. ***Plan Documents*** means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date, including, but not limited to, (i) the Liquidating Trust Agreement, and (ii) the APA. Each of the Plan Documents to be entered into as of the Effective Date will be filed in draft form in the Plan Supplement.

1.60. ***Plan Supplement*** means a supplemental appendix to the Plan that will contain the draft form of the Plan Documents to be entered into as of the Effective Date, to be filed prior to the Confirmation Hearing.

1.61. ***Priority Non-Tax Claim*** means any Claim against any of the Debtors other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.62. ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.63. ***Punitive Damage Claim*** means, to the maximum extent permitted by law, any Claim against any of the Debtors, whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees, or damages is not compensation for actual pecuniary loss suffered by the holder of such Claim and not statutorily prescribed.

1.64. ***Purchaser*** means _____, (the successful bidder selected in accordance with the Bidding Procedures Order and approved by the Bankruptcy Court at the Purchaser Selection Hearing).

1.65. ***Purchaser Selection Hearing*** means the hearing held by the Bankruptcy Court to confirm the results of the auction held in accordance with the Bidding Procedures at which the Purchaser will be approved.

1.66. ***Purchaser Selection Order*** means the order entered by the Bankruptcy Court at the Purchaser Selection Hearing approving the Purchaser.

1.67. ***Ratable Proportion*** means the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class or category of Administrative Expense Claim to the aggregate amount of all Allowed Claims in the same Class or category of Administrative Expense Claim, *provided, however,* that in the case of Classes E, F and G "Ratable Proportion" means the ratio (expressed as a percentage) of the amount of an Allowed Claim in any of those Classes to the aggregate amount of all Allowed Claims in such Classes.

1.68. ***Reorganization Cases*** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on June 1, 2003, in the United States District Court for the Southern District of New York and styled *In re WestPoint Stevens, Inc., et al.,* 03-13532 (RDD) (Jointly Administered).

1.69. ***Sale Order*** means an Order approving the APA and the transactions contemplated thereunder including, without limitation, the sale of all or substantially all of the Debtors' assets free and clear of all liens, Claims, encumbrances and other interests. If the Confirmation Order is entered it shall be deemed the Sale Order.

1.70. ***Sale Proceeds*** means the proceeds received pursuant to the APA in connection with the sale of all or substantially all of the Debtors' assets which may include, among other forms of consideration, Cash, stock and/or rights. The Sale Proceeds will be distributed to creditors in order of their priority and in the following order: (i) Cash, until all Cash has been distributed, (ii) stock, until all stock has been distributed, and (iii) rights, until all rights have been distributed. A detailed exhibit setting forth the specific form of Sale Proceeds to be distributed to creditors pursuant to the Plan and the procedures governing such distribution, including, if applicable, a description of any rights offering to be held in connection with the Sale and confirmation of the Plan will be filed as an exhibit to the Plan after the Purchaser Selection Hearing.

1.71. ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended from time to time.

1.72. ***Second Lien Lender Administrative Agent*** means Wilmington Trust Company as administrative agent under the Second Lien Lender Agreement, or any successor agent thereto.

1.73. ***Second Lien Lender Agreement*** means that certain Second Lien Credit Facility, dated as of June 29, 2001, among WestPoint as Borrower, Wilmington Trust Company (as successor to Deutsche Bank Trust Company Americas (f/k/a Bankers Trust Company)), as Administrative Agent, and the banks and other financial institutions from time to time parties thereto.

1.74. ***Second Lien Lender Claim*** means any claim against any of the debtors based on the Second Lien Lender Agreement (inclusive of post-petition adequate protection payments) to the extent of the value of their collateral, net of all Cash payments made by the Debtors to the holders of such claims on or after the Commencement Date. Any other Claims arising under the Second Lien Lender

Agreement will be treated as Administrative Claims or Class E General Unsecured Claims as determined by the Bankruptcy Court.

1.75. *Secured Claim* means a Claim to the extent (i) secured by Collateral, the amount of which is equal to or less than the value of such Collateral (A) as set forth in the Plan, (B) as agreed to by the holder of such Claim and the Debtors, or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.76. *Securities Act* means the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

1.77. *Securities Litigation Claim* means any claim against any of the Debtors, whether or not the subject of an existing lawsuit, arising from rescission of a purchase or sale of shares or shares or notes of any of the Debtors, for damages arising from the purchase or sale of any security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of any such claim.

1.78. *Series A Beneficial Interests* means the first priority beneficial interests in the Liquidating Trust, entitling holders to receive distributions from the Liquidating Trust having a value up to the amount (if any) of the superpriority administrative claim awarded to the Second Lien Lenders by the Bankruptcy Court. In the event no superpriority administrative claim is awarded to the holders of Second Lien Lender Claims, no Series A Beneficial Interests shall be distributed.

1.79. *Series B Beneficial Interests* means the second priority beneficial interests in the Liquidating Trust, entitling holders to receive distributions from the Liquidating Trust having a value up to the Allowed Amount of their Claims. Series B Beneficial Interests will be distributed in the following priority: (i) to holders of Non-Assumed Administrative Expense Claims and compensation and reimbursement Claims, (ii) to holders of Priority Non-Tax Claims and (iii) to holders of Priority Tax Claims.

1.80. *Series C Beneficial Interests* means the residual beneficial interests in the Liquidating Trust.

1.81. *Tax Code* means the Internal Revenue Code of 1986, as amended from time to time.

1.82. *WestPoint Common Stock Interest* means the Equity Interest of any holder of the authorized common stock issued by WestPoint Stevens Inc., or any option, warrant, or right, contractual or otherwise, to acquire any such Equity Interest.

B. **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

SECTION 2.     **ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

2.1.     *Assumed Administrative Expense Claims.*

Each holder of an Assumed Administrative Expense Claim shall, pursuant to the APA, have its Administrative Expense Claim assumed, performed and paid when due by the Purchaser in the ordinary course of business in accordance with the terms and subject to the conditions of the APA and any agreements governing, instruments evidencing, or other documents relating to such transactions. The holders of Allowed Assumed Administrative Expense Claims shall have recourse only to Purchaser and neither the Debtors, their Estates nor their respective properties shall be subject to any such Claims.

2.2.     *Non-Assumed Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Non-Assumed Administrative Expense Claim agrees to a different treatment and except as provided below, the Debtors shall pay to each holder of an Allowed Non-Assumed Administrative Expense Claim, Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Non-Assumed Administrative Expense Claim becomes an Allowed Non-Assumed Administrative Expense Claim.

In the event that insufficient funds exist to pay all Non-Assumed Administrative Expense Claims in full on the Effective Date or upon allowance, the holder of each Allowed Non-Assumed Administrative Expense Claim shall receive, in full satisfaction of such Claim, at the option of the Debtors, either (i) its Ratable Proportion of Cash available (if any) to the Debtors for distribution on the Effective Date or (ii) its Ratable Proportion of the Sale Proceeds (if any) remaining after satisfaction of the Allowed Claims secured by valid liens on the assets sold to Purchaser and (iii) its Ratable Proportion of Series B Beneficial Interests (if any). Each holder of a Non-Assumed Administrative Expense Claim shall be deemed to have agreed to such ratable treatment and such treatment shall be deemed to satisfy section 1129(a)(9) as to such holder unless such holder files an objection to such treatment on or before the deadline to file an objection to confirmation of the Plan. If there is no Cash, Sale Proceeds or Series B Beneficial Interests available for distribution there shall be no distribution to holders of Claims in any of these classes.

2.3.     *Compensation and Reimbursement Claims.*

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (ii) except as provided below, shall be paid in such amounts as are allowed by the Bankruptcy Court (A) upon the later of (1) the Effective Date, and (2) the date upon which the order relating to any such Administrative Expense Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Debtors. The Debtors or the Disbursing Agent are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

Other than amounts covered by the carve-out approved by the Bankruptcy Court in the Final DIP Order and the Adequate Protection Order, in the event that compensation and reimbursement Claims are not assumed by Purchaser and there exist insufficient funds to pay all compensation and

reimbursement Claims in full on the Effective Date or upon allowance, the holder of each non-assumed Allowed compensation and reimbursement Claim shall receive, in full satisfaction of such Claim, at the option of the Debtors, either (i) its Ratable Proportion of Cash available (if any) to the Debtors for distribution on the Effective Date or (ii) its Ratable Proportion of the Sale Proceeds (if any) remaining after satisfaction of the Allowed Claims secured by valid liens on the assets sold to Purchaser and (iii) its Ratable Proportion of Series B Beneficial Interests (if any).  Each holder of a compensation and reimbursement Claim shall be deemed to have agreed to such ratable treatment and such treatment shall be deemed to satisfy section 1129(a)(9) as to such holder unless such holder files an objection to such treatment on or before the deadline to file an objection to confirmation of the Plan.  If there is no Cash, Sale Proceeds or Series B Beneficial Interests available for distribution there shall be no distribution to holders of Claims in any of these classes.

### 2.4.   *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors, (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (ii) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to six percent (6%), over a period not exceeding six (6) years after the date of assessment of such Allowed Priority Tax Claim.  The Debtors reserve the right to prepay at any time under this option.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

In the event that insufficient funds exist to pay all Allowed Priority Tax Claims in full on the Effective Date or upon allowance, the holder of each Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, at the option of the Debtors, after the allocations set forth in sections 2.2, 2.3 and 4.1 either (i) its Ratable Proportion of Cash available (if any) to the Debtors for distribution on the Effective Date or (ii) its Ratable Proportion of the Sale Proceeds remaining (if any) after satisfaction of the Allowed Claims secured by valid liens on the assets sold to Purchaser and (iii) its Ratable Proportion of the Series B Beneficial Interests (if any).  Each holder of a Priority Tax Claim shall be deemed to have agreed to such ratable treatment and such treatment shall be deemed to satisfy section 1129(a)(9) as to such holder unless such holder files an objection to such treatment on or before the deadline to file an objection to confirmation of the Plan.  If there is no Cash, Sale Proceeds or Series B Beneficial Interests available for distribution there shall be no distribution to holders of Claims in any of these classes.

### 2.5.   *DIP Claims*.

On the Effective Date, the Debtors shall pay or arrange through Purchaser for the payment of all amounts outstanding under the DIP Credit Agreement.  Once such payment has been made, these agreements, and any agreements or instruments related thereto, shall be deemed terminated (subject in all respects to any carve-out approved by the Bankruptcy Court in the Final DIP Order and the Adequate Protection Order), and Bank of America, N.A., as administrative agent, and the lenders thereunder shall take all reasonable action to confirm the removal of any liens on the properties of the Debtors securing such DIP Credit Agreement.  On the Effective Date, any outstanding letters of credit issued under such agreement shall be either replaced by Purchaser or secured by cash collateral or by letters of credit arranged to be issued by Purchaser in accordance with the APA.

SECTION 3.    **CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

   The following table designates the Classes of Claims against and Equity Interests in the Debtors and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan.

| *Class* | *Designation* | *Impairment* | *Entitled to Vote* |
|---------|---------------|--------------|--------------------|
| Class A | Priority Non-Tax Claims | Impaired | Yes |
| Class B | Other Secured Claims | Impaired | Yes |
| Class C | First Lien Lender Claims | Impaired | Yes |
| Class D | Second Lien Lender Claims | Impaired | Yes |
| Class E | General Unsecured Claims | Impaired | Yes |
| Class F | Noteholder Claims | Impaired | Yes |
| Class G | PBGC Claims | Impaired | Yes |
| Class H | Litigation Claims | Impaired | No |
| Class I | Intercompany Claims | Impaired | Yes (will accept) |
| Class J | Securities Litigation Claims | Impaired | No (deemed to reject) |
| Class K | Punitive Damage Claims | Impaired | No (deemed to reject) |
| Class L | Common Stock Interests | Impaired | No (deemed to reject) |

SECTION 4.    **TREATMENT OF CLAIMS AND EQUITY INTERESTS**

   4.1. *Priority Non-Tax Claims (Class A)*.

   If not otherwise assumed by the Purchaser under the APA and except to the extent that a holder of an Allowed Priority Non-Tax Claim against any of the Debtors has agreed to a different treatment of such Claim, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the parties.

   In the event that insufficient funds exist to pay all Allowed Priority Non-Tax Claims in full on the Effective Date or upon allowance, the holder of each Allowed Priority Non-Tax Claim shall receive, in full satisfaction of the Allowed Claims secured by valid liens on the assets sold to Purchaser and (iii) its sections 2.2, and 2.3, either (i) its Ratable Proportion of Cash available (if any) to the Debtors for distribution on the Effective Date or (ii) its Ratable Proportion of the Sale Proceeds remaining (if any) after satisfaction of the Allowed Claims secured by valid liens on the assets sold to Purchaser and (iii) its Ratable Proportion of the Series B Beneficial Interests (if any).  Each holder of a Priority Non-Tax Claim shall be deemed to have agreed to such ratable treatment and such treatment shall be deemed to satisfy section 1129(a)(9) as to such holder unless such holder files an objection to such treatment on or before the deadline to file an objection to confirmation of the Plan.  If there is no Cash, Sale Proceeds or Series B Beneficial Interests available for distribution there shall be no distribution to holders of Claims in any of these classes.

### 4.2. *Other Secured Claims (Class B)*.

Each Holder of an Allowed Other Secured Claim shall have its Other Secured Claim assumed and paid in full by Purchaser over a six month period following the Effective Date. The Debtors or the Purchaser shall have the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Other Secured Claims.

### 4.3. *First Lien Lender Claims (Class C)*.

Each holder of a First Lien Lender Claim shall receive (subject in all respects to the carve-out approved by the Bankruptcy Court in the Final DIP Order and the Adequate Protection Order) its Ratable Proportion of the Sale Proceeds until the value of such Sale Proceeds equals the Allowed First Lien Lender Claim of such holder. Sale Proceeds remaining, if any, after allocation to Class C shall be distributed as described below.

### 4.4. *Second Lien Lender Claims (Class D)*.

Each holder of a Second Lien Lender Claim shall receive (subject in all respects to the carve-out approved by the Bankruptcy Court in the Final DIP Order and the Adequate Protection Order) its (i) Ratable Proportion of the Sale Proceeds remaining after the allocation in section 4.3 until the value of such Sale Proceeds equals the Allowed Second Lien Lender Claim of such holder and (ii) to the extent not paid in full, its Ratable Proportion of the Series A Beneficial Interests (if any). Sale Proceeds remaining, if any, after allocation to Class D shall be distributed as described below.

### 4.5. *General Unsecured Claims (Class E)*.

Each holder of an Allowed General Unsecured Claim shall receive (i) its Ratable Proportion of the Sale Proceeds remaining (if any) after the allocations in sections 2.2, 2.3, 2.4, 4.1, 4.3 and 4.4 and (ii) its Ratable Proportion of the Series C Beneficial Interests (if any).

### 4.6. *Noteholder Claims (Class F)*.

Each holder of a Noteholder Claim shall receive (i) its Ratable Proportion of the Sale Proceeds remaining (if any) after the allocations in sections 2.2, 2.3, 2.4, 4.1, 4.3 and 4.4 and (ii) its Ratable Proportion of the Series C Beneficial Interests (if any).

### 4.7. *PBGC Claims (Class G)*.

The PBGC shall receive (i) its Ratable Proportion of the Sale Proceeds remaining (if any) after the allocations in sections 2.2, 2.3, 2.4, 4.1, 4.3 and 4.4 and (ii) its Ratable Proportion of the Series C Beneficial Interests (if any).

### 4.8. *Litigation Claims (Class H)*.

All Litigation Claims are Disputed Claims and will be governed by the terms of Section 7 hereof.

### 4.9. *Intercompany Claims (Class I)*.

On or prior to the Effective Date, each Allowed Intercompany Claim shall be extinguished by either offset, distribution, contribution of such Intercompany Claim, or otherwise (as, and to the extent, determined by the Debtors).

### 4.10. *Securities Litigation Claims (Class J)*.

The holders of Securities Litigation Claims shall receive no distribution of property under the Plan on account of such claims.

### 4.11. *Punitive Damage Claims (Class K)*.

Each holder of a Punitive Damage Claim shall receive no distribution under the Plan.

### 4.12. *Common Stock Interests (Class L)*.

On the Effective Date, all WestPoint Common Stock Interests shall be cancelled and there shall be no distributions made to such holders on account of such WestPoint Common Stock Interests under the Plan.

## SECTION 5.  MEANS FOR IMPLEMENTATION

### 5.1. *Sale of Substantially All the Assets*.

The filing of the Plan constitutes a motion for an order of the Bankruptcy Court approving, pursuant to Bankruptcy Code sections 363 and 365, the APA and the transactions contemplated thereunder, including, without limitation, the sale of the Debtors' assets free and clear of all liens, Claims, encumbrances and other interests and the assumption and assignment of the Assigned Contracts and Leases thereunder.  Confirmation of the Plan shall constitute authorization for such relief.

In the event the Debtors decide not to continue to pursue confirmation of the Plan or the Bankruptcy Court denies confirmation of the Plan, the Debtors reserve the right to designate the Confirmation Hearing as the Sale Hearing and seek entry of the Sale Order pursuant to sections 363 and 365 of the Bankruptcy Code.

### 5.2. *Deemed Consolidation of Debtors for Plan Purposes Only*.

Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated for the following purposes under the Plan: (i) no distributions shall be made under the Plan on account of the Intercompany Claims; (ii) all guaranties by any of the Debtors of the obligations of any other Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Debtor and any guaranty thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors; and (iii) each and every Claim filed or to be filed in the Reorganization Case of any of the Debtors shall be deemed filed against the deemed consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan and as set forth above in this Section) affect: (i) the legal and organizational structure of the Debtors; (ii) Intercompany Claims by and among the Debtors; (iii) pre- and

post-Commencement Date guaranties, liens, and security interests that are required to be maintained (A) in connection with executory contracts or unexpired leases that were entered into during the Reorganization Cases or that have been or will be assumed by Purchaser, (B) pursuant to the Plan; and (iv) distributions out of any insurance policies or proceeds of such policies.

5.3.  *Authorization of Plan Securities.*

The Purchaser and NewCo are authorized to issue all plan related securities and documents set forth in the APA.

5.4.  *Release of Representatives.*

As of the Effective Date, the respective officers, directors, employees, financial advisors, investment bankers, professionals, accountants, and attorneys of the Debtors, the Creditors Committee appointed pursuant to section 1102 of the Bankruptcy Code in the Reorganization Cases, the First Lien Lender Administrative Agent, the Second Lien Lender Administrative Agent and the Indenture Trustees shall be released by the Debtors from all claims against them in their capacity as representatives of the Debtors, the Creditors Committee, the First Lien Lender Claims, the Second Lien Lender Claims and the Noteholder Claims as applicable, except for claims based on willful misconduct, gross negligence or breach of the duty of loyalty.

5.5.  *Cancellation of Existing Securities and Agreements.*

Except for purposes of evidencing a right to distributions under the Plan or otherwise provided hereunder, on the Effective Date, all the agreements and other documents evidencing the Claims or rights of any holder of a Claim against the Debtors, including all indentures and notes evidencing such Claims and any options or warrants to purchase Equity Interests, obligating the Debtors to issue, transfer, or sell Equity Interests or any other capital stock of the Debtors, shall be canceled; *provided, however,* that the Indentures relating to the Noteholder Claims shall continue in effect solely for the purposes of (i) allowing the Indenture Trustee to make any distributions on account of holders of Claims in those classes pursuant to the Plan and to perform such other necessary administrative functions with respect thereto, and (ii) permitting the Indenture Trustee to maintain any rights or liens they may have for fees, costs, and expenses under the Indenture.

5.6.  *Board of Directors.*

The names of the initial Board of Directors of NewCo and the Purchaser shall be disclosed at or prior to the Confirmation Hearing.

5.7.  *Officers.*

The officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of NewCo and the Purchaser.  After the Effective Date, the officers of NewCo and the Purchaser shall be determined by the Board of Directors.

5.8.  *Corporate Action.*

Upon the Effective Date, the Debtors shall perform each of the actions and effect each of the transfers required by the terms of the Plan and the APA, in the time period allocated therefor, and all matters provided for under the Plan and the APA, that would otherwise require approval of the stockholders, partners, members, directors, or comparable governing bodies of the Debtors shall be

deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable law) of the states in which the Debtors are incorporated or organized, without any requirement of further action by the stockholders, members, or directors (or other governing body) of the Debtors. Each of the Debtors shall be authorized and directed, following the completion of all disbursements, other transfers, and other actions required of the Debtors by the Plan, to file its certificate of cancellation, dissolution or merger as contemplated by Section 5.11 hereof. The filing of such certificates of cancellation, dissolution or merger shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without express or implied limitation, any action by the stockholders, members or directors (or other governing body) of the Debtors.

5.9. *Effectuating Documents and Further Transactions.*

Each of the officers of each of the Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the APA.

5.10. *Claims Administration, Prosecution and Plan Distributions.*

The Debtors, or if the Liquidating Trust is established, the Liquidating Trustee, shall continue to have the power and authority to prosecute and resolve objections to Disputed Non-Assumed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, Disputed Other Secured Claims, Disputed compensation and reimbursement Claims and Litigation Claims. The Debtors or, if the Liquidating Trustee is established, the Liquidating Trustee, shall also continue to have the power and authority to hold, manage and distribute Plan distributions to the holders of Allowed Non-Assumed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims and Allowed compensation and reimbursement Claims.

5.11. *Dissolution.*

Within thirty (30) days after its completion of the acts required by the Plan, or as soon thereafter as is practicable, each Debtor shall be deemed dissolved for all purposes without the necessity of any other or further actions to be taken by or on behalf of each Debtor; *provided, however,* that each Debtor shall file with the office of the Secretary of State or other appropriate office for the state of its organization a certificate of cancellation or dissolution, or alternatively, it may be merged with and into another Debtor and so file an appropriate certificate of merger.

SECTION 6. **DISTRIBUTIONS**

6.1. *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests. The Debtors and the Liquidating Trustee shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Distribution Record Date. The Debtors and the Liquidating Trustee shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 6.2. *Date of Distributions*.

Except as otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.3. *Post-Petition Interest on Claims*.

Unless expressly provided in the Plan, the Confirmation Order, the Final DIP Order or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or required by applicable bankruptcy law, postpetition interest shall not accrue on or after the Commencement Date on account of any Claim.

### 6.4. *Distributions to Classes*.

On the Effective Date, the Disbursing Agent shall distribute the Sale Proceeds to the individual holders of the First Lien Lender Claims and the Sale Proceeds and Series A Beneficial Interests (if any) to individual holders of Second Lien Lender Claims in such denominations and registered in the names of the holders as the First Lien Lender and Second Lien Lender Administrative Agents shall have directed in writing. In the event insufficient funds exist to pay all Allowed Non-Assumed Administrative Expense Claims, Allowed compensation and reimbursement claims, Allowed Priority Non-Tax Claims and Allowed Priority Tax Claims in full in Cash on the Effective Date, the Disbursing Agent shall distribute to holders of such claims, in accordance with the allocations set forth in sections 2.2, 2.3, 2.4 and 4.1 at the option of the Debtors, either (i) their Ratable Proportion of the Cash available (if any) to the Debtors for distribution on the Effective Date or (ii) their Ratable Proportion of the Sale Proceeds remaining (if any) after distribution to the First and Second Lien Lenders and (iii) their Ratable Proportion of the Series B Beneficial Interests (if any). The Disbursing Agent shall also distribute to holders of Allowed Claims in Classes E, F and G on the Effective Date the Sale Proceeds remaining (if any) after distribution to the afore-mentioned Claimholders and their Ratable Proportion of the Series C Beneficial Interests (if any). For the purpose of calculating the Sale Proceeds and Series B and Series C Beneficial Interests in the Liquidating Trust to be distributed to holders of Allowed Non-Assumed Administrative Expense Claims, Allowed compensation and reimbursement claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Class E, F and G Claims on the Effective Date, all Disputed Claims in such Classes will be treated as though such Claims were Allowed Claims in the amounts asserted by the holders of such Claims or as estimated by the Bankruptcy Court, as applicable. On the Final Distribution Date, each holder of an Allowed Non-Assumed Administrative Expense Claims, Allowed compensation and reimbursement Claim, Allowed Priority Tax Claim, Allowed Priority Non-Tax Claim and Allowed Classes E, F or G Claim shall receive a Catch-up Distribution of Sale Proceeds and Beneficial Interests in the Liquidating Trust, as applicable. After the Effective Date, but prior to the Final Distribution Date, the Debtors or the Liquidating Trustee, in their sole discretion, may direct the Disbursing Agent to distribute Sale Proceeds and Beneficial Interests in the Liquidating Trust, as applicable, to a holder of a Disputed Claim which becomes an Allowed Claim after the Effective Date such that the holder of such Claim receives the same allocation of Sale Proceeds and Beneficial Interests in the Liquidating Trust, as applicable, that such holder would have received had its Claim been an Allowed Claim in such amount on the Effective Date.

### 6.5.    *Disbursing Agent.*

Except as provided in Section 9, all distributions under the Plan (other than distributions described in the next sentences) shall be made by the applicable Debtor as Disbursing Agent or such other entity designated by the applicable Debtor as a Disbursing Agent on or after the Effective Date.  The Indenture Trustee shall be the Disbursing Agent for the respective Noteholders in Class F.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the applicable Debtor.

### 6.6.    *Rights and Powers of Disbursing Agent.*

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 6.7.    *Compensation of Expenses Incurred on or After the Effective Date.*

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorneys' fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Debtors or, if the Liquidating Trust is established, the Liquidating Trustee.

### 6.8.    *Surrender of Instruments.*

As a condition to receiving any distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee, unless such certificated instrument or note is being reinstated or being left unimpaired under the Plan.  Any holder of such instrument or note that fails to (i) surrender such instrument or note, or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any distribution under the Plan.  Any distribution so forfeited shall become property of the Debtors, or, if the Liquidating Trust is established, the Liquidating Trust.  The Debtors, or if the Liquidating Trust is established, the Liquidating Trustee, reserve the right to waive this requirement.

### 6.9.    *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim, except the holders of First Lien Lender Claims, Second Lien Lender Claims and Noteholder Claims, shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents or in a letter of transmittal unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.  All distributions to holders of First Lien Lender Claims shall be made to the First Lien Lender Administrative Agent.  All distributions to holders of Second Lien

Lender Claims shall be made to the Second Lien Lender Administrative Agent. Any distribution of Sale Proceeds or beneficial interests in the Liquidating Trust to the Indenture Trustee shall be deemed a distribution to the respective holder of a Noteholder Claim. In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent or the Liquidating Trustee, as the case may be, shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent or the Liquidating Trustee, as the case may be, has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to the Liquidating Trust and any claim in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Debtors, their Estates, their property and the Liquidating Trustee.

6.10. *Distributions of Cash*.

Any payment of Cash made by the Disbursing Agent or the Liquidating Trustee, where applicable, pursuant to the Plan shall, at the Disbursing Agent or Liquidating Trustee's option, be made by check drawn on a domestic bank or by wire transfer.

6.11. *Fractional Shares*.

In the event the Sale Proceeds consist of common or preferred stock, no fractional shares or Cash in lieu thereof, shall be distributed. For purposes of distribution, any fractional shares shall be rounded down to the next whole number or zero, as applicable. A detailed description of the Sale Proceeds to be distributed pursuant to the Plan will be filed as an Exhibit to the Plan after the Purchaser Selection Hearing.

6.12. *Setoffs*.

The Debtors and, where applicable, the Liquidating Trustee, may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which such distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against the holder of such Claim. Notwithstanding anything contained herein to the contrary, the Debtors will not set off against any Claim of a First or Second Lien Lender who votes in favor of the Plan.

6.13. *Minimum Distributions*.

Except as provided in section 9.10, no distribution of less than $100.00 shall be made by the Debtors, the Disbursing Agent or the Liquidating Trustee, where applicable, to any holder of a Claim unless a request therefor is made in writing to the Debtors, the Disbursing Agent or the Liquidating Trustee.

6.14. *Distributions After the Effective Date*.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 6.15. *Allocation of Plan Distributions Between Principal and Interest*.

To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 6.16. *Withholding and Reporting Requirements.*

In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Beneficial Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. The Disbursing Agent has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

## SECTION 7. PROCEDURES FOR DISPUTED CLAIMS

### 7.1. *Objections to Claims*.

The Debtors and, if the Liquidating Trust is established, the Liquidating Trustee or the Second Lien Lender Administrative Agent in accordance with section 9.2, on and after the Effective Date, shall be entitled to object to Claims. Any objections to Claims shall be served and filed on or before the later of (i) one hundred eighty (180) days after the Effective Date, and (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

### 7.2. *Payments and Distributions with Respect to Disputed Claims*.

(a) ***General***. Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

(b) ***Litigation Claims***. All prepetition Litigation Claims not previously allowed by Final Order are Disputed Claims. Subject to the rights of the Debtors and the Liquidating Trustee under section 7.4 hereof, prepetition Litigation Claims as to which proofs of claim were timely filed in the Reorganization Cases shall be determined and liquidated in the Bankruptcy Court unless the Debtors or the Liquidating Trustee elect or the Bankruptcy Court orders, that such claims be determined and liquidated in the administrative or judicial tribunal in which it is pending on the Confirmation Date or, if no such action was pending on the Confirmation Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceeding as same may be approved by order of a court of competent jurisdiction. Any prepetition Litigation Claim determined and liquidated (i) pursuant to a judgment obtained in accordance with this section 7.2 and applicable non-bankruptcy law that is no longer subject to appeal or other review, or (ii) in any alternative dispute resolution or similar proceeding as same may be approved by order of a court of competent jurisdiction, shall be deemed to be an Allowed Claim in Class E, J, or K as applicable, in such liquidated amount and satisfied in accordance with the Plan; *provided*, that to the extent that a Litigation Claim is allowed and is covered under any of the Debtor's insurance policies, such Claim shall be paid from the

insurance proceeds available to satisfy such liquidated amount. Nothing contained in this section 7.2 impairs the Debtors' or the Liquidating Trustee's right to seek estimation of any and all Litigation Claims in a court or courts of competent jurisdiction or constitute or be deemed a waiver of any claim, right or cause of action that the Debtors may have against any person in connection with or arising out of any Litigation Claim, including, without limitation, any rights under section 157(b) of title 28 of the United States Code.

### 7.3. *Estimation of Claims*.

The Debtors or, after the Effective Date, the Liquidating Trustee, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trustee, where applicable, previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Trustee, where applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 7.4. *Distributions Relating to Disputed Claims*.

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent or the Liquidating Trustee, where applicable, shall distribute to the holder of such Claim, such holder's Ratable Proportion of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the holders of Allowed Claims in the same class.

### 7.5. *Distributions after Allowance*.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the Order or Judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent or the Liquidating Trustee, where applicable, shall provide to the holder of such Claim, the distribution to which such holder is entitled under the Plan.

### 7.6. *Preservation of Rights to Settle Claims*.

In accordance with Section 11.7 hereof and section 1123(b) of the Bankruptcy Code, the Debtors and the Liquidating Trustee shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, causes of action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any person or entity without the approval of the Bankruptcy Court, subject to the terms of section 7.1 hereof, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into

in connection with the Plan. The Liquidating Trustee may pursue such retained claims, rights or causes of action, suits or proceedings, as appropriate, in accordance with the best interests of the holders of the Beneficial Interests.

### 7.7. *Disallowed Claims*.

All claims held by persons or entities against whom any Debtor has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code, shall be deemed "disallowed" claims pursuant to section 502(d) of the Bankruptcy Code and holders of such claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Liquidating Trustee from such party have been paid.

## SECTION 8. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1. *General Treatment*.

On the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected as of the Effective Date, except for an executory contract that (i) has already been assumed or rejected pursuant to Final Order of the Bankruptcy Court, (ii) is specifically designated as a contract or lease to be assumed and assigned in accordance with the APA, (iii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtors prior to the Confirmation Date, or (iv) is an option or warrant to purchase common stock of any of the Debtors or right to convert any Equity Interest into common stock of any of the Debtors to the extent such option, warrant, or conversion right is determined not to be an Equity Interest.

For purposes hereof, each executory contract and unexpired lease that relates to the use or occupancy of real property shall include all (x) modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired Lease, and (y) all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises to the extent any of the foregoing agreements are specifically rejected.

### 8.2. *Assigned Contracts and Leases.*

The filing of the Plan constitutes a motion by the Debtors, pursuant to section 365 and 1123 of the Bankruptcy Code, to assume and assign to the Purchaser the Assigned Contracts and Leases. Each of the Assigned Contracts and Leases shall be assumed and assigned to the Purchaser as of the Closing on the terms and conditions set forth in the APA and the Sale Order; *provided, however*, that the Debtors reserve the right up to eleven (11) days prior to the Confirmation Hearing, to amend the Schedules to the APA by adding any executory contract or unexpired lease thereto, deleting any Assigned Contract or lease therefrom, or amending any cure amount set forth thereon, in which event such executory contract(s) or unexpired lease(s) shall be deemed so amended. The Debtors shall, no later than ten (10) days prior to the Confirmation Hearing, provide notice of any amendments to the APA Schedules to the parties to the executory contracts and leases affected thereby. The listing of a document on a Schedule to the APA shall not constitute an admission by the Debtors that such document is an executory contract or unexpired lease or that the Debtors have any liability thereunder.

### 8.3. *Cure of Defaults*.

Except as otherwise may be agreed to by the parties, at the Closing, or as promptly thereafter as practicable, the Purchaser shall cure those defaults under the Assigned Contracts or Leases under the APA that need to be cured in accordance with Section 365(b) of the Bankruptcy Code on the terms and subject to the conditions set forth in the APA and the Sale Order by (a) payment of the undisputed cure amounts or (b) reserving amounts with respect to the disputed cure amounts.

### 8.4. *Rejection Claims*.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, the Debtors' respective properties or interests in property as agents, successors, or assigns or the Liquidating Trust, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date that is thirty (30) days after the Confirmation Date or such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults.

### 8.5. *Insurance Policies*.

Except as otherwise provided herein or in the APA, all insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the respective Debtors and assigned to either the Purchaser in accordance with the APA or the Liquidating Trustee and shall continue in full force and effect.

## SECTION 9. ESTABLISHMENT OF THE LIQUIDATING TRUST AND APPOINTMENT OF A LIQUIDATING TRUSTEE

### 9.1. *Appointment of a Liquidating Trustee*.

In the event Series A Beneficial Interests are issued as provided herein, then, on the Effective Date, the Second Lien Agent shall designate, with the consent of the Creditors Committee and the Debtors, which consent shall not be unreasonably withheld, the Liquidating Trustee for the Liquidating Trust. In the event no Series A Beneficial Interests are issued, the Liquidating Trustee shall be designated by the Creditors Committee with the consent of the Debtors, which consent shall not be unreasonably withheld. The designation of the Liquidating Trustee shall be effective on the Effective Date without the need for a further order of the Bankruptcy Court.

### 9.2. *Creation of the Beneficial Interests and Execution of the Liquidating Trust Agreement*.

This Section 9 sets forth certain of the rights, duties and obligations of the Liquidating Trustee. In the event of any conflict between the terms of this Section 9 and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

On the Effective Date, the Liquidating Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the Beneficial Interests therein. There shall be three sets of Beneficial Interests created under the Liquidating Trust Agreement: (i) Series A Beneficial Interests, (ii) Series B Beneficial Interests in accordance with the allocations set forth in

sections 2.2, 2.3, 2.4 and 4.1 of the Plan and (iii) Series C Beneficial Interests.  Proceeds received from the Liquidating Trust Assets will be distributed to holders of Beneficial Interests in the following order of priority: (i) to holders of Series A Beneficial Interests until the holders of Series A Beneficial Interests have been paid in full, (ii) to holders of Series B Beneficial Interests until the holders of Series B Beneficial Interests have been paid in full, and (iii) to holders of Series C Beneficial Interests.  In the event no Series A Beneficial Interests are distributed as set forth herein, no distribution on account of such Series A Beneficial Interests shall be made.  In such event, distributions will be made first to holders of Series B Beneficial Interests and then to holders of Series C Beneficial Interests.  In the event no Series B Beneficial Interests are distributed as set forth herein, no distribution on account of such Series B Beneficial Interests shall be made.  In such event, distributions will be made first to holders of Series A Beneficial Interests and, if no Series A Beneficial Interests have been distributed, to holders of Series C Beneficial Interests.  In the event the value of the Liquidating Trust Assets does not exceed the amount of the superpriority administrative claim awarded to the Second Lien Lenders by the Bankruptcy Court, no Liquidating Trust will be established and no distributions will be made on account of holders of Beneficial Interests.  Instead, the Liquidating Trust Assets will be assigned directly to the Second Lien Lender Administrative Agent who shall distribute them to, or liquidate them for the benefit of holders of Second Lien Lender Claims in accordance with the terms of the Second Lien Lender Agreement.  In such event, the Second Lien Lender Administrative Agent will be authorized to and responsible for the tax reporting requirements set forth in section 9.12(b)(vii).

      9.3.     ***Purpose of the Liquidating Trust.***

The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

      9.4.     ***Assignment of Trust Assets.***

On the Effective Date, or as soon thereafter as practicable, the Debtors shall transfer and shall be deemed to have transferred to the Liquidating Trust, for and on behalf of the holders of Beneficial Interests, the Liquidating Trust Assets free and clear of all liens, Claims, encumbrances and other interests.

      9.5.     ***Books and Records.***

Upon the Effective Date, WestPoint shall transfer and assign to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all of the books and records of the Debtors which are not sold pursuant to the APA.  The Liquidating Trust shall have the responsibility of storing and maintaining books and records transferred hereunder until one year after the date WestPoint is dissolved in accordance with section 5.11 hereof, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order.  The Debtors shall cooperate with the Liquidating Trustee to facilitate the delivery and storage of their books and records in accordance herewith.  The Debtors (as well as their current and former officers and directors) shall be entitled to reasonable access to any books and records transferred to the Liquidating Trust for all necessary corporate purposes, including, without limitation, defending or prosecuting litigation, determining insurance coverage, filing tax returns, and addressing personnel matters.  For purposes of this Section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to their books and records, wherever located.

### 9.6. *Role of the Liquidating Trustee*.

In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee shall (A) have the power and authority to hold, manage, sell, and distribute the Liquidating Trust Assets to the holders of Beneficial Interests in accordance with the Plan, (B) hold the Liquidating Trust Assets for the benefit of the holders of Beneficial Interests, (C) have the power and authority to hold, manage, sell and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority, (D) have the power and authority to prosecute and resolve, in the names of the Debtors and/or the name of the Liquidating Trustee, the Avoidance Actions, (E) have the power and authority to prosecute and resolve objections to Disputed Claims, (F) have the power and authority to perform such other functions as are provided in the Plan, and (G) have the power and authority to administer the closure of the Chapter 11 Cases. The Liquidating Trustee shall be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets. In all circumstances, the Liquidating Trustee shall act in the best interests of all beneficiaries of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust.

### 9.7. *Nontransferability of Liquidating Trust Interests*.

The beneficial interests in the Liquidating Trust shall not be certificated and are not transferable, except by will or the laws of descent and distribution.

### 9.8. *Permitted Investments*.

The Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; *provided, however,* that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

### 9.9. *Costs, Expenses and Compensation of the Liquidating Trustee*.

The costs and expenses of the Liquidating Trust, including the fees and expenses of the Liquidating Trustee and its retained professionals shall be paid out of the Liquidating Trust Assets. The Liquidating Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings.

### 9.10. *Distribution of Liquidating Trust Assets*.

The Liquidating Trustee shall distribute at least annually and in accordance with the Liquidating Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, the Liquidating Trust Assets on hand, except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed prior to the time of such distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

9.11.    *Retention of Professionals by the Liquidating Trustee.*

The Liquidating Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval.  The Liquidating Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases.

9.12.    *Federal Income Tax Treatment of Liquidating Trust.*

(a)    **Tax Treatment and Transfer of Liquidating Trust Assets**.

For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the holders of Non-Assumed Administrative Expense Claims, compensation and reimbursement Claims, Priority Tax Claims, Priority Non-Tax Claims, Second Lien Lender Claims, General Unsecured Claims, Noteholder Claims and PBGC Claims) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the holders of Beneficial Interests, whether Allowed on or after the Effective Date, as (A) a transfer of the Liquidating Trust Assets directly to the holders of Beneficial Interests in satisfaction of such Claims (other than to the extent allocable to Disputed Claims) followed by (B) the transfer by such holders to the Liquidating Trust of the Liquidating Trust Assets in exchange for beneficial interests in the Liquidating Trust.  Accordingly, the holders of such Claims shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Liquidating Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b)    **Tax Reporting**.

(i)    The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 9.12. The Liquidating Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns.  The Liquidating Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to Section 9.12(b)(iii) and (iv) hereof) to the holders of Beneficial Interests, in accordance with their relative Beneficial Interests in the Liquidating Trust.

(ii)    As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets.  Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the holders of Beneficial Interests) for all federal income tax purposes.  The Liquidating Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit.

(iii)    Allocations of Liquidating Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its other assets (valued at their tax book value) to the holders of the Beneficial Interests (treating certain pending Disputed Non-Assumed Administrative Expense Claims, compensation and reimbursement Claims, Priority Tax Claims, Priority Non-Tax Claims, Second Lien Lender Claims, General Unsecured Claims, Noteholder Claims and PBGC Claims as if they were Allowed Claims; see Section 9.12(b)(iv) below) in each case up to the tax book value of

25

the assets treated as contributed by such holders, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable tax regulations, and other applicable administrative and judicial authorities and pronouncements.

(iv)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (i) treat any Liquidating Trust Assets allocable to, or retained on account of, Beneficial Interests that would be distributed to holders of Disputed Non-Assumed Administrative Expense Claims, compensation and reimbursement Claims, Priority Tax Claims, Priority Non-Tax Claims, Second Lien Lender Claims, General Unsecured Claims, Noteholder Claims and PBGC Claims if such claims were Allowed as held by one or more discrete trusts for federal income tax purposes (the "Liquidating Trust Claims Reserve"), consisting of separate and independent shares to be established in respect of each such Disputed Claim, in accordance with the trust provisions of the Tax Code (section 641 *et seq.*), (ii) treat as taxable income or loss of the Liquidating Trust Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Liquidating Trust that would have been allocated to the holders of such Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Liquidating Trust Claims Reserve any increased amounts distributed by the Liquidating Trust as a result of any such Disputed Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Liquidating Trust Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All holders of Beneficial Interests, shall report, for tax purposes, consistent with the foregoing.

(v)     The Liquidating Trustee shall be responsible for payments, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets, including the Liquidating Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Liquidating Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trustee as a result of the resolutions of such Disputed Claims.

(vi)     The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Liquidating Trust Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

(vii)     After the Effective Date, the Liquidating Trustee shall be authorized to exercise all powers regarding the Debtors' tax matters, including filing tax returns, to the same extent as if the Liquidating Trustee were the Debtor in Possession. The Liquidating Trustee shall (A) complete and file within ninety (90) days of the filing for dissolution by WestPoint Stevens, to the extent not previously filed, the Debtors' final federal, state, and local tax returns, (B) request an expedited determination of any

unpaid tax liability of the Debtors under section 505(b) of the Bankruptcy Code for all tax periods of the Debtors ending after the Commencement Date through the liquidation of the Debtors as determined under applicable tax laws, to the extent not previously requested, and (C) represent the interest and account of the Debtors before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

### 9.13. *Dissolution of the Liquidating Trust.*

The Liquidating Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all Disputed Claims have been resolved, (ii) all Liquidating Trust Assets have been liquidated, and (iii) all distributions required to be made by the Liquidating Trustee under the Plan have been made, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets or the dissolution of the Debtors.

### 9.14. *Indemnification of the Liquidating Trustee.*

The Liquidating Trustee or the individuals comprising the Liquidating Trustee, as the case may be, and the Liquidating Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts. Any indemnification claim of the Liquidating Trustee (and the other parties entitled to indemnification under this Section 9.14) shall be satisfied from the Liquidating Trust Assets. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

### 9.15. *Closing of the Chapter 11 Cases.*

When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all of the Liquidating Trust Assets have been distributed in accordance with the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### 9.16. *Closing of the Chapter 11 Cases by Charitable Gift.*

If at any time the Liquidating Trustee determines that the expense of administering the Liquidating Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, the Liquidating Trustee shall apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the Chapter 11 Cases, (ii) donate any balance to a charitable organization exempt from federal income tax under section 501(c)(3) of the Tax Code that is unrelated to WestPoint Stevens Inc., the Liquidating Trust, and any insider of the Liquidating Trustee, and (iii) close the Chapter 11 Cases in accordance with the Bankruptcy Code and Bankruptcy Rules. If the aims or purposes of any charities satisfying the conditions of clause (ii) above relate to benefiting the

residents of WestPoint, Georgia, then the Liquidating Trustee shall choose any recipients of any donations from among such charities. Notice of such application shall be given electronically, to the extent practicable, to those parties who have filed requests for notices and whose electronic addresses remain current or operating.

SECTION 10. **CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE.**

10.1. *Conditions Precedent to Confirmation.*

Entry of the Confirmation Order in a form and substance reasonably satisfactory to the Debtors and the approval of a Purchaser at the Purchaser Selection Hearing are conditions precedent to confirmation of the Plan.

10.2. *Conditions Precedent to the Effective Date.*

The Plan shall not become effective unless and until the following conditions have been satisfied in full or waived:

(a) The Confirmation Order and the Sale Order, in a form and substance reasonably acceptable to the Debtors and the Purchaser, shall each have been entered and shall not have been modified except as permitted hereby or upon consent of the parties and shall not be subject to a stay.

(b) The Liquidating Trust Agreement shall have been executed or a determination shall have been made that no Liquidating Trust is necessary;

(c) The Closing shall have occurred; and

(d) The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are required to implement the Plan and the APA; and

(e) all actions, documents and agreements required to implement the Plan shall have been effected or executed.

10.3. *Failure of Conditions.*

In the event that one or more of the conditions specified in Section 10.1 or 10.2 of the Plan have not occurred or have been waived in accordance with Section 10.4 of the Plan, on or before [one hundred and twenty (120) days] after the Confirmation Date, (i) the Confirmation Order shall be vacated, (ii) no Distributions under the Plan shall be made (and the Distributions that have been made shall be unwound), (iii) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) the Debtors obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any entity in any further proceedings involving the Debtors.

10.4. *Satisfaction of Conditions*.

If the Debtors decide, after consultation with the Purchaser, that one of the conditions precedent set forth in Sections 10.1 and 10.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

## SECTION 11. **EFFECT OF CONFIRMATION**

### 11.1. *Vesting of Assets*.

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' bankruptcy estates which are not transferred pursuant to the APA shall vest in the Debtors free and clear of all liens, Claims, encumbrances, charges, and other interests, except as provided herein. In accordance with Section 9 hereof and subject to the exceptions contained therein, upon the Effective Date, the Liquidating Trust Assets shall be transferred to the Liquidating Trust free and clear of all liens, Claims, encumbrances and interests, except as provided herein. From and after the Effective Date, if the Liquidating Trust is established, the Liquidating Trustee may dispose of the assets of the Liquidating Trust free of any restrictions of the Bankruptcy Code but in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

### 11.2. *Discharge of Claims and Termination of Equity Interests*.

Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder, shall discharge all existing debts and Claims, and terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Debtors or the Purchaser any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest. Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors, shall not be affected by the Plan and shall be expressly preserved in the Confirmation Order.

### 11.3. *Discharge of Debtors*.

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors. Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors shall not be affected by the Plan and shall be expressly preserved in the Confirmation Order.

### 11.4. *Term of Injunctions or Stays*.

(a)     Unless otherwise provided, all injunctions or stays arising under or entered during the Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such order.

(b)     *Injunction Regarding Worthless Stock Deduction*.  Unless otherwise ordered by the Bankruptcy Court, on and after the Confirmation Date, any "fifty percent shareholder" within the meaning of section 382(g)(4)(D) of the Internal Revenue Code of 1986, as amended, shall be enjoined from claiming a worthless stock deduction with respect to any Equity Interest held by such shareholder for any taxable year of such shareholder ending prior to the Effective Date.

### 11.5. *Injunction Against Interference With the Plan or APA*.

Upon the entry of the Sale Order with respect to the APA or the Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or the APA.

### 11.6. *Exculpation*.

Neither the Debtors, the Purchaser, the Liquidating Trustee, the Disbursing Agent, the Creditors Committee appointed pursuant to section 1102 of the Bankruptcy Code in the Reorganization Cases, the First Lien Lender Administrative Agent, the Second Lien Lender Administrative Agent, the Indenture Trustees nor any of their respective members, officers, directors, employees, agents, financial advisors, investment bankers or professionals shall have or incur any liability to any holder of any Claim or Equity Interest for any act or omission in connection with, or arising out of, the Reorganization Cases, the confirmation of the Plan, the consummation of the Plan and APA, or the administration of the Plan or property to be distributed under the Plan, except for willful misconduct or gross negligence.

### 11.7. *Retention of Causes of Action/Reservation of Rights*.

(a)     Except as provided in the APA, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors may have or which the Debtors or, in accordance with Section 9 hereof, the Liquidating Trustee may choose to assert on behalf of the Debtors' respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, and (ii) the turnover of any property of the Debtors' estates.  Except as otherwise provided in the Plan or the APA, on and after the Effective Date, the Debtors will have the right to enforce any and all Causes of Action against any person other than Avoidance Actions, and the Liquidating Trustee shall have the exclusive right to enforce any and all Avoidance Actions against any person and the right to enforce Causes of Action not enforced by the Debtors.  The Debtors may pursue, abandon, settle or release any or all Causes of Action, other than Avoidance Actions, as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.  The Liquidating Trustee may pursue, abandon, settle or release any or all Causes of Action not pursued by the Debtors and Avoidance Actions as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.  The Debtors may, in their discretion, offset any claim held against a person other than Avoidance Actions, against any payment due such person under the Plan,

and the Liquidating Trustee may offset any claim with respect to Avoidance Actions and Causes of Action not pursued by the Debtors held against a person against any payment due such person under the Plan, provided, however, that any claims of the Debtors arising before the Commencement Date shall first be offset against Claims against the Debtors arising before the Commencement Date.

(b)     Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left unimpaired by the Plan.  The Debtors and the Liquidating Trustee shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Commencement Date fully as if the Reorganization Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted by the Debtors or the Liquidating Trustee after the Confirmation Date to the same extent as if the Reorganization Cases had not been commenced.

SECTION 12.  **RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Reorganization Cases for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom.

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date.

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein.

(d)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, Administrative Claim, or Equity Interest.

(e)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order, the Purchaser Selection Order or the Sale Order is for any reason stayed, reversed, revoked, modified, or vacated.

(f)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, the Purchaser Selection Order or the Sale Order or any other order of the Bankruptcy Court.

(g)     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, Purchaser Selection Order and Sale Order in such a manner as may be necessary to carry out the purposes and effects thereof.

(h)     To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date.

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the APA, the Plan, the Confirmation Order, the Sale Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing.

(j)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or the APA or to maintain the integrity of the Plan or the APA following consummation.

(k)     To hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code.

(l)     To determine such other matters and for such other purposes as may be provided in the Purchase Selection Order, the Sale Order or the Confirmation Order.

(m)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Liquidating Trust or the Liquidating Trust Agreements.

(n)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods of the Debtors, the Liquidating Trust or the Liquidating Trust Claims Reserve ending after the Commencement Date ).

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

(p)     To enter a final decree closing the Reorganization Cases.

(q)     To recover all assets of the Debtors and property of the Debtors' estates, wherever located.

### SECTION 13.  **MISCELLANEOUS PROVISIONS**

### 13.1.  *Payment of Statutory Fees*.

On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### 13.2.  *Dissolution of Statutory Committee of Unsecured Creditors*.

The Creditors Committee appointed pursuant to section 1102 of the Bankruptcy Code in the Reorganization Cases shall dissolve on the Effective Date, except that the Creditors Committee shall have the right to review and object to any applications for compensation and reimbursement of expenses filed in accordance with section 2.3 hereof.

### 13.3.  *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.4.  *Effectuating Documents & Further Transactions*.

Each of the Debtors and the Liquidating Trustee is authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the transfer of the Debtors' Assets under the APA and the terms and conditions of the Liquidating Trust Agreement.

### 13.5.  *Corporate Action*.

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors are incorporated, without any requirement of further action by the stockholders or directors of the Debtors.

### 13.6.  *Request for Expedited Determination of Taxes*.

The Debtors or the Liquidating Trustee shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the date on which the Debtors are dissolved.

### 13.7.  *Exemption from Transfer Taxes*.

Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the APA or the Plan (including transfers of assets to and by the Liquidating Trust) shall not be subject to any stamp, real estate transfer, mortgage, recording, sales, use or other similar tax.

### 13.8.  *Amendments*.

(a)  *Plan Modifications & Amendments*.  The Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)  *Other Amendments*.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan, including the filing of additional exhibits, and may make amendments to the Plan to reflect the outcome of the Purchaser Selection Hearing without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications and amendments do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

### 13.9. *Revocation or Withdrawal of the Plan*.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors take such action, the Plan shall be deemed null and void.

### 13.10. *Severability*.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.11. *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 13.12. *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 13.13. *Notices*.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

WestPoint Stevens, Inc.
P.O. Box 71507
West Tenth Street
WestPoint, Georgia 31833
Attn: Clayton Humphries
Vice President and General Counsel
Telephone: (706) 645-4115
Telecopier: (706) 645-4396

- and -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

Attn: Michael F. Walsh, Esq.
     John J. Rapisardi, Esq.
Telephone: (212) 310-8000
Telecopier: (212) 310-8007

with copies to:

The Attorneys for the Agent under the First Lien Lender Agreement

Telephone:
Telecopier:

-and-

The Attorneys for the Steering Committee of First Lien Lenders
Hennigan, Bennett & Dorman, LLP
601 S. Figueroa Street, Suite 3300
Los Angeles, California 90017
Attn: Bruce Bennett, Esq.
Telephone: (213) 694-1200
Telecopier: (213) 694-1234

-and-

The Attorneys for Icahn Associates
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas, 24th Floor
New York, NY 10020
Attn: Peter Wolfson, Esq.
Telephone: (212) 768-6700
Telecopier: (212) 768-6800

-and-

The Attorneys for the Agent under the Second Lien Lender Agreement
Kramer Levin Naftalis & Frankel, LLP
919 Third Avenue
New York, NY 10022
Attn: Thomas Mayer, Esq.
Telephone: (212) 715-9100
Telecopier: (212) 715-8000

-and-

The Attorneys for the Creditors Committee
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Attn: Lawrence M. Handelsman, Esq.
Telephone: (212) 806-5400
Telecopier: (212) 806-6006

Dated:  New York, New York
       June 10, 2005

                        Respectfully submitted,

                        WestPoint Stevens, Inc.
                        WestPoint Stevens Inc., I
                        J. P. Stevens and Co., Inc.
                        J. P. Stevens Enterprises, Inc.
                        WestPoint Stevens Stores, Inc.

                        By:  WestPoint Stevens, Inc.

                              By:     /s/ Lester D. Sears         
                                         Name: Lester D. Sears
                                         Title: Chief Financial Officer

**EXHIBITS AND SCHEDULES**

**TO THE PLAN**

## EXHIBIT A

## WESTPOINT DEBTORS

1.     WestPoint Stevens Inc.

2.     WestPoint Stevens Inc., I

3.     J. P. Stevens and Co., Inc.

4.     J. P. Stevens Enterprises, Inc.

5.     WestPoint Stevens Stores, Inc.